Jack Warren BABCOCK, Appellant,

v.

STATE of Missouri, Respondent.

No. 56487.

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

Rehearing Denied Oct. 9, 1972.

Larry R. Marshall, Columbia, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Rule 27.26, V.A. M.R., to vacate and set aside judgment of conviction of murder, second degree.

On December 7, 1947, Jack Warren Babcock and four others, William Wiley, Herman Alva Robinson, Arthur Schofield, and Alfred Bradley, arrived by automobile in Randolph County, Missouri, for the purpose of robbing several persons thought to be engaged in a dice game at a service station on U.S. Highway 63, a mile and a half south of Moberly. Bradley remained in the automobile, Robinson and Schofield went to the front door, movant went to one side door, and Wiley went to the other. All four were armed. Schofield and Robinson broke the front door and a shot, apparently fired by Schofield, killed Roy Eubanks. After the shot was fired, movant and Wiley also entered the station and assisted in taking money and valuables from the game's participants.

On April 1, 1948, movant was arrested in Kansas City and taken to Moberly. He had no attorney at that time.

On April 7, 1948, transcript of magistrate court proceedings affecting Wiley, Schofield, and Robinson was filed in the Circuit Court of Randolph County.

On July 15, 1948, information was filed charging movant, Wiley, and Robinson with murder, first degree. On the same date *nolle prosequi* was entered as to Robinson and he was endorsed as a state's witness.

On July 30, 1948, movant and Wiley, represented by their attorney, John Carmody, waived formal arraignment and pleaded not guilty. Their trial was set for September 21, 1948.

On September 7, 1948, the case was reset by agreement for trial on October 6, 1948. On September 28, the defense disqualified the judge and the Honorable W. M. Dinwiddie of an adjoining circuit was assigned to the case. On October 6, 1948, the defense secured a change of venue from the inhabitants of Randolph County, Judge Dinwiddie awarded venue to Boone County, and movant and Wiley were lodged in the Boone County jail from which they escaped. They were later rearrested in Van Buren, Arkansas. Upon their return, they were separated—Wiley being jailed on the first floor and movant on the second.

Early in November, 1948, Wiley and one Hamilton were frustrated in a second escape attempt and Judge Dinwiddie, after a hearing, ordered movant and Wiley to the Missouri State Penitentiary for pretrial safekeeping. Movant stated he was kept in solitary confinement on death row and described conditions of his confinement as very poor. He acknowledged that he received no threats or mistreatment while in the penitentiary awaiting trial.

On November 29, 1948, defense counsel obtained another continuance, this time on the inability of Schofield to testify and until his sanity could be determined, and because Bradley was not available. The case was reset for trial December 8, 1948.

On December 8, 1948, the case came on for trial with movant, Wiley, and their lawyer, Mr. Carmody, present. Various motions were considered and a jury empaneled. Movant and Wiley then discharged Mr. Carmody, saying he "couldn't get motions through," and was "laughed out of court." Movant and Wiley were returned to prison. Movant wrote to three attorneys without response. The case was reset for trial January 19, 1949.

On January 3, 1949, movant and Wiley were returned to court where they were met by Wiley's brother and sister-in-law, and Wiley's new attorneys, Mr. Joseph N. Miniace and Mr. Harry E. Whitney. When movant was taken to the courtroom, Judge Dinwiddie ascertained that he did not have counsel and appointed Mr. Miniace and Mr. Whitney to represent him also.

Movant then conferred with his lawyers for fifteen to twenty minutes before lunch. He heard them tell Wiley they knew nothing of the case until they were retained the previous night. The lawyers conferred with Wiley for about two hours before movant entered the conference room.

Movant and Wiley were returned to jail for lunch. They discussed the case and were "hoping for a break."

After lunch, movant and Wiley were returned to court for further conference. Mr. Whitney advised that the state would reduce the charge to murder, second degree. Movant felt he would get twenty-five years' imprisonment and be released from solitary confinement. Mr. Whitney stated an opinion that the judge would not give the maximum on a guilty plea.

Movant acknowledged that the attorneys did not urge either defendant to plead guilty, and that he and Wiley decided to plead guilty. Movant pleaded guilty because he wanted out of solitary confinement, because it was a good deal, and because he felt he had a promise of a twenty to twenty-five year sentence.

Movant's criticism of his attorneys was that they did not advise of the nature of the charge, or what would happen if he did not plead guilty. He was not asked any questions about his background, record, family, or the facts of the crime. He acknowledged that his attorneys recited the facts of the crime accurately when the guilty plea was entered. He also acknowledged discussing matters with his lawyers that afternoon and that he did, in some manner, communicate his desire to plead guilty to his attorneys. Movant knew the range of punishment, and his excuse for raising no previous objection to the punishment was that he was "dumbfounded."

Movant's attorneys were lawyers of considerable experience, particularly in criminal cases. Their recollections at the hearings in October and December, 1968, of matters which transpired twenty years earlier, were understandably reserved. It was their custom to advise clients of their rights and to discuss the facts surrounding the charge. They never urged an accused to plead guilty, inasmuch as that decision was up to the client. The lawyers took one deposition in connection with the case on behalf of codefendant Wiley and had extensive discussions with him about the crime. They talked to movant both in the morning and afternoon about the facts of the offense. They doubted they inquired about movant's background and they did not investigate Schofield's mental condition.[1]

The information was amended to charge murder, second degree, and movant, represented by Mr. Miniace and Mr. Whitney, withdrew his not guilty plea and pleaded guilty to the charge of murder, second degree. He was thus convicted, his punishment was fixed at life imprisonment, and he is currently imprisoned as a result.

Proceedings at the time the guilty plea was entered included a detailed statement by the prosecuting attorney of the facts of the offense, the existence of other charges that could be filed, and a request that punishment be fixed at life imprisonment. Counsel then recited the facts in similar detail as he understood them, emphasized that movant did not fire the fatal shot, made a request for mitigation, that sentence be deferred until all participants could be brought to trial, and that the court consider a sentence of twenty years.

The court then passed judgment and the prosecuting attorneys indicated they would not be filing any further charges in view of the sentence imposed on the guilty plea.

Appellant presents three contentions:

I. That the court erred in its finding of effective assistance of counsel because:

A. Counsel failed: to conduct independent investigation, consult with defendant concerning constitutional rights, and present a defense that since the principal in the murder was insane, he as an aider or abettor could not be guilty;

B. Counsel failed to correct misstatements in the prosecuting attorney's recital of facts;

C. Counsel failed to consult with defendant prior to the day his plea was entered;

D. Counsel was also hired by Wiley and therefore had a conflict of interest with representation of movant.

II. That the court erred in finding defendant's plea was voluntary because he did not understand the nature of the crime, its punishment and the law and defenses, particularly that of his principal's insanity, available to him.

III. That the court erred in finding that the insanity of Arthur Schofield was not available as a defense to defendant.

■ The court's findings and conclusions in denial of relief to movant are presumed correct and are to be affirmed un-

---

1. Schofield was acquitted on his charge of murder on the ground of insanity.

less clearly erroneous. Rule 27.26, supra; Crosswhite v. State, Mo., 426 S.W.2d 67.

■ With respect to the specific contention made under III, and with respect to it as an incident of I and II, suffice to say that one who conspires with or aids or abets another in commission of homicide is not exempt from prosecution for second degree murder because of his principal's insanity at the time of the killing. To hold otherwise would permit one to use an insane person as his agent of destruction. Jones v. State, 31 Ala.App. 504, 19 So.2d 81, 83[2]. Accordingly, there is no merit in contention III, and there can be no ineffective assistance of counsel or involuntariness of a guilty plea by reason of failure to present or find available such a defense in this case, as urged under I and II.

In addition to the insanity defense issue, the specific charge of ineffective assistance of counsel contains three other premises: That the appointment of and consultation with counsel occurred on the day the plea was entered; that counsel failed to conduct independent investigation; and that a conflict of interest existed between the codefendants.

■ Appellant would support the first of these assertions by argument that late appointment of counsel alone raises a presumption of ineffective assistance of counsel. See, e.g., United States ex rel. Mathis v. Rundle, 3 Cir., 394 F.2d 748. Such concept is no longer followed, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 416; and the cited authority for the concept has been overruled, Moore v. United States, 3 Cir., 432 F.2d 730. Note also that the amount of time spent by an attorney with his client is not the standard for determining the adequacy of his efforts on behalf of his client, Kress v. United States, 8 Cir., 411 F.2d 16, Johnson v. State, Mo., 442 S.W.2d 41; and there is no showing of a request or need for additional time, State v. Bobbitt, Mo., 465 S.W.2d 579.

■ With respect to the asserted failure to investigate, there is no showing what facts or defenses would have been discovered by any such investigation. Such a silent record is detrimental to movant because he bore the burden of proof. Rule 27.26, supra; State v. Brown, Mo., 449 S.W.2d 664. In addition to movant's noted failure, the record does show discussions with two participants in the robbery-murder, and there was no question of accuracy of facts stated by the prosecuting attorney and counsel in the plea proceedings. Absent a showing of prejudice by way of the asserted failure to investigate, it may not be said that movant met his burden on this issue. State of Missouri v. Turley, 8 Cir., 443 F.2d 1313.

■ The alleged conflict of interest is based only upon the assertion that representation by the attorneys for movant and his codefendant was a conflict of interest. Such, standing alone, is insufficient to show ineffective assistance of counsel. Mason v. State, Mo., 468 S.W.2d 617.

In addition to the insanity defense issue, the specific charge of involuntary plea of guilty is further premised on the asserted ineffective assistance of counsel and failure of the court to conduct plea proceedings consistent with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. See also Williams v. State, Mo., 473 S.W.2d 97; Rule 25.04, V.A.M.R.

The insanity defense and ineffective assistance of counsel issue have already been ruled against movant.

■ A plea of guilty may be withdrawn only if necessary to correct manifest injustice, State v. Parker, Mo., 413 S. W.2d 489. Noncompliance with Rule 25.-04,[2] supra, does not require that a plea of guilty be set aside if the record shows it to have been, in fact, voluntarily entered, and a plea which predates Boykin v. Alabama, supra, is not judged on its standards be-

2. Not in effect when this plea was entered.

■

cause it has not been applied retroactively, Bracy v. State, Mo., 456 S.W.2d 302.

Appellant argues that his plea was involuntary because of dissatisfaction with conditions of his confinement, an assumption he would not receive the maximum punishment, and the inadequacy of counsel.

 Taking the last assertion first, it is noted that adequacy of representation is important only as it affects the total plea proceedings and is not an independent ground which requires as a necessity that a plea be found involuntary. State v. Turley, supra. Similarly, dissatisfaction with confinement conditions does not render an otherwise voluntary plea involuntary. State v. Turley, supra; Kress v. United States, supra; Peck v. State, Mo., 467 S. W.2d 884.

Perhaps the true gist of appellant's complaints is that he received a sentence more severe than expected; however, he testified that he was "hoping for a break" and that he understood any talk of length of sentence to be an opinion only. This is not a sufficient showing to require that the guilty plea be set aside. Barylski v. State, Mo., 473 S.W.2d 399. Nor does movant's testimony that he was expecting by way of promise a twenty to twenty-five year sentence controlling, because the trial court was not obliged to accept this testimony. Such was a matter of movant's credibility and was for the court to resolve, Crego v. State, Mo., 447 S.W.2d 550; and the court's resolution of the issue is quite proper when viewed together with the substantial lapse of time between plea and this complaint, Skaggs v. State, Mo., 476 S.W. 2d 524.

Accordingly, it may not be said on this record that the court's findings and conclusions are manifestly erroneous.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

BARDGETT, Acting P. J., SEILER, J., and FINCH, C. J., concur.

HOLMAN, P. J., not sitting.